<table>
<tr><td></td><td>

**FILED**

March 16, 2023
Jeanne A. Naughton, CLERK
United States Bankruptcy Court
Newark, NJ

By: _Sharon Moore_

Courtroom Deputy

</td></tr>
</table>

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>AHMED FAROOQ SAKHE,<br><br>                    Debtor. | Case No.:    15-32238-RG |
| ERIC R. PERKINS, in his capacity as Chapter 7 Trustee for the bankruptcy estate of Ahmed Farooq Sakhe,<br><br>                    Plaintiff,<br><br>    v.<br><br>NORTH PARK REALTY MANAGEMENT, LLC, MICHAEL KHAKSHOOR, YOUSEF KHAKSHOOR, SION NOBEL, and MEHRAN KOHANSIEH a/k/a MIKE KOHANSIEH a/k/a MIKE KOHEN,<br><br>                    Defendants. | Chapter 7<br><br>Adv. Pro. No. 16-01576- RG |

## OPINION

**APPEARANCES**:

ROBERT D. TOWEY, ESQ.
J. ALEX KRESS, ESQ.
Becker LLC
354 Eisenhower Parkway, Ste. 1500
Livingston, NJ 07039
Counsel for Plaintiff,
Chapter 7 Trustee, Eric R. Perkins

JOSEPH C. LANE, ESQ.
2600 Highway 35
Lawrenceville, NJ 08648
Counsel to Defendants, North Park Realty
Management, LLC, Yousef Khakshoor, Michael
Khakshoor, Sion Nobel, and Mehran Kohansieh
a/ka/ Mike Kohansieh a/k/a Mike Kohen

RICHARD GERACE, ESQ.[1]
Gerace Law Office
1515 Market Street, Ste. 1200
Philadelphia, PA 19102
Counsel for Plaintiff,
Chapter 7 Trustee, Eric R. Perkins

THOMAS A. FARINELLA, ESQ.[2]
Law Office of Thomas A. Farinella
260 Madison Avenue, 8th Fl.
New York, NY 10016

Supreet K. Parmar
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike Ste 100
Floral Park, New York 11001

Counsel to Defendants, North Park Realty
Management, LLC, Yousef Khakshoor, Michael
Khakshoor, Sion Nobel, and Mehran Kohansieh
a/k/a Mike Kohansieh a/k/a Mike Kohen

ERIC R. PERKINS, ESQ.
Chapter 7 Trustee
Becker, LLC
354 Eisenhower Parkway, Ste. 1500
Livingston, NJ 07039

**ROSEMARY GAMBARDELLA, UNITED STATES BANKRUPTCY JUDGE**

**MATTER BEFORE THE COURT**

Before the Court is the Plaintiff's Calculation of Damages (ECF No. 115) and

Amended Calculation of Damages (ECF No. 117); Defendants' Response to Calculation of

Damages (ECF No. 118); and Plaintiff's Reply to Defendant's Response to Plaintiff's

Calculation of Damages (ECF No. 119). Plaintiff also filed Plaintiff's Memorandum re:

Pre and Post Judgment Interest Applicable to Defendants' Breach of Contract (ECF No.

120). Defendants' Response to Calculation of Damages (ECF No. 121), Defendants'

Memorandum in Opposition to Plaintiff's Supplemental Memorandum in Support of Pre

---

[1] By Order dated February 25, 2016, Gerace Law Office was authorized as special counsel.  (ECF No. 16), Case No. 15-32238.
[2] By Order dated February 8, 2018, Mr. Farinella was permitted to appear *pro hac vice*.  (ECF No. 31).

and Post Petition Judgment Interest as to the Defendants' Breach of Contract (ECF No. 122) and Plaintiff's Reply to Defendants' Opposition to Plaintiff's Memorandum Re: Pre and Post Petition Interest and Fees and Costs Applicable to Defendants' Breach of Contract (ECF No. 123). The Court heard oral argument on July 21, 2022 at which time the Court reserved its decision. The following constitutes this Court's findings of fact and conclusions of law.

## PROCEDURAL HISTORY

This Court incorporates the facts set forth in the legal opinion, *Perkins v. N. Park Realty Mgmt., LLC (In re Sakhe)*, 2021 WL 5999195 (Bankr. D.N.J. Dec. 17, 2021). The Court presumes familiarity with the procedural and factual history set forth therein.

## SUMMARY OF FILINGS

### *Plaintiff's Calculation of Damages (ECF No. 115) and Amended Calculation of Damages (ECF No. 117)*

On January 20, 2022, through counsel, Plaintiff filed Plaintiff's Calculation of Damages Letter ("Damages Letter"), (ECF No. 115), and then on February 7, 2022, Plaintiff filed an Amended Calculation of Damages, (ECF No. 117). For the purposes of clarity, and due to the similarity between these filings, both of these documents are summarized together.

### *Counts One and Four*

With respect to Counts One and Four, the Court found Section 4.3 of the North Park Agreement was breached by failing to tender the $7,000 special monthly distribution payments to the Debtor. Accordingly, the Court granted judgment in favor of the Trustee and against North Park for all amounts past due and owing to the Debtor plus penalty

interest at a rate of 8% percent per annum for all amounts past due and reasonable attorneys' fees and costs.

The Plaintiff requests the Court apply the judgment to January 20, 2022. *See* Pl.'s Am. Calculation of Damages 9, (ECF No. 117). Plaintiff provided a calculation of damages and applied an interest rate of 8% for the periods of February 1, 2009 to December 2013, which is approximately 58 months and for the period of February 1, 2009 to January 2022 which is about 155 months. The period from February 2009 to December 2013 yields damages totaling $495,600, whereas the period from February 1, 2009 through January 20, 2022 yields a total of $1,663,320. A summary of these calculations is set forth here:

| Time Period | Months | Monthly Amount | Total Amount (Months x Monthly Amount) | Interest Rate | Total Interest (Total Amount x Interest Rate) | Total Damages (Total Amount + Total Interest) |
|---|---|---|---|---|---|---|
| February 1, 2009 to December 2013 | 59 | $7,000 | $413,000 | 8% | $82,600 | $495,600 |
| February 1, 2009 to January 20, 2022 | 155 | $7,000 | $1,092,000 | 8% | $571,320 | $1,663,320[3] |

### *Calculation of Damages: February 1, 2009 to December 2013*

For the time period of February 1, 2009 to December 2013, the outstanding balance

---

[3] All amounts provided by Plaintiff's counsel. *See* Pl.'s Am. Calculation of Damages 9, (ECF No. 117).

is $413,000.00.  Pl.'s Am. Calculation of Damages 9, (ECF No. 118).   For this same period, Plaintiff asserts the interest rate is 8% per annum which equals $82,600.00.  *Id*.  Therefore, under this time period, Plaintiff  asserts the total judgment should be $495,600.00.  *Id.*

### *Calculation of Damages: February 1, 2009 to January 20, 2022*

Plaintiff also provides that if the time period is extended from February 1, 2009 to January 20, 2022, the total principal that is due and owing is $1,092,000.00.  *Id*.  Thus, applying 8% interest per annum to this adds interest of $571,320.00.  *Id*.  Therefore, under this time period, Plaintiff asserts the total judgment should be $1,663,320.00.  *Id.*

### *Count Two*

As to Count Two, the Court granted judgment in favor of the Trustee and against Mehran Kohansieh on his personal guarantee of payment of the $1,000 monthly special distribution payments under Section 9(c) of the River City Agreement including appropriate interest.  The Court found that attorneys' fees and costs were not guaranteed in Section 9(c) of the River City Agreement, so these are not awarded.  Plaintiff avers that the River City Agreement is governed by Iowa law and cites to Iowa Code § 535.2 in support of their position that an interest rate of 5% should be charged.  Plaintiff asserts that this interest should be applied through January 20, 2022.  Plaintiff also provides two calculations:

| Time Period | Months | Monthly Amount | Total Amount (Months x Monthly Amount) | Interest Rate | Total Interest (Total Amount x Interest Rate) | Total Damages (Total Amount + Total Interest) |
|---|---|---|---|---|---|---|
| | | | | | | |

| February 1, 2009, to December 2013 | 59 | $1,000 | $59,000 | 5% | $7,129.16 | $66,129.16 |
| February 1, 2009 to January 20, 2022 | 155 | $1,000 | $155,000 | 5% | $50,375 | $205,375[4] |

### *Plaintiff's Calculation of Damages: February 1, 2009 to December 2013*

Plaintiff asserts that for the time period from February 1, 2009 to December 2013, a total of $1,000 per month was due and owing for 59 months which totals $59,000. Pl.'s Am. Calculation of Damages 10, (ECF No. 117). Plaintiff applies a 5% interest rate which totals $7,129.16. *Id.* This interest plus $59,000 equals $66,129.16. *Id.*

### *Plaintiff's Calculation of Damages: February 1, 2009 to January 20, 2022*

Plaintiff asserts that for the time period of February 1, 2009, to January 20, 2022, that a total of $1,000 per month was due and owing for 155 months which totals $155,000. *Id.* Plaintiff applies a 5% interest rate which totals $50,375. *Id.* This interest plus $155,000 equals $205,375. *Id.*

### *Count Three*

With respect to Count Three, the Court entered judgment in favor of the Trustee and against Mehran Kohansieh and Michael Khakshoor for breach of Section 2 of the River City Agreement and held Mehran and Michael jointly and severally liable to the Trustee for the sum of $100,000 plus costs and expenses of collection, including reasonable attorneys' fees. The Court found that the Defendants breached the River City Agreement on or about

---

[4] All amounts provided by Plaintiff's counsel. *See* Pl.'s Am. Calculation of Damages 10, (ECF No. 117).

April/May 2008.  *See In re Sakhe*, 2021 WL 5999195 at *36.

Plaintiff argues this Court should apply Iowa law to this matter because the River City

Agreement is governed by Iowa law.  Plaintiff cites to Iowa Code § 535.2 in support of their

position that an interest rate of 5% should be charged with such interest being applied to

January 20, 2022.  Plaintiff provides two different calculations:

| Time Period | Months | Total Amount | Interest Rate | Total Interest (Total Amount x Interest Rate) | Total Damages (Total Amount + Total Interest) |
|---|---|---|---|---|---|
| May 2008 to December 2013 | 67 | $100,000 | 5% | $27,918.90 | $127,918.90 |
| May 2008 to January 20, 2022 | 164 | $100,000 | 5% | $68,333.33 | $168,333.33[5] |

### *Calculation of Damages: May 2008 to December 2013*

The Court granted Count Three of the Amended Adversary Complaint to the extent

that judgment was entered.  *In re Sakhe*, 2021 WL 5999195, at *46.  Therefore, Defendants argue

joint and several liability is governed by the single statutory scheme set forth in N.J. Stat.

Ann. §§ 2A:15-5.1–5.3.  Defs.' Resp. 4, (ECF No. 121).  Defendants contend that under this

statute and *Erny v. Estate of Merola*, 171 N.J. 86 (2002), this Court has discretion to

apportion liability and should apportion liability with  Mehran and Michael each liable for fifty

percent.

Previously this Court entered judgment "in favor of the Trustee and against Mehran

and Michael jointly and severally on their personal guarantee for return of $100,000."  *In re*

---

[5] All amounts provided by Plaintiff's counsel.  *See* Pl.'s Am. Calculation of Damages 10, (ECF No. 117).

*Sakhe*, 2021 WL 5999195, at \*46.

As iterated in this prior opinion, the judgment of $100,000 arises out of Section 2 of the River City Agreement. *Id.* at \*45–46. This Court relied on the plain language of Section 2 of the River City Agreement in finding Mehran and Michael are jointly and severally liable for the sum of $100,000. Section 2 of the River City Agreement states "[Defendants], jointly and severally, hereby agree to personally guarantee the return of $100,000.00 to Assignee within thirty (30) days." *Id.* at \*46. Therefore, the sum of $100,000 is due and owing.

The remaining issue with respect to Count Three is whether this Court should apply interest to the $100,000. Plaintiff asserts that for the period of May 2008 to December 2013, which is a total of 67 months, the Court should apply a 5% interest rate; thus, the total interest is $27,918.90. Pl.'s Am. Calculation of Damages 10, (ECF No. 117). This interest plus $100,000.00 equals $127,918.90.

### *Calculation of Damages: May 2008 to January 20, 2022*

Plaintiff asserts that for the period of May 2008 to January 20, 2022, the Court should apply an interest rate of 5%. *Id.* This is a 164-month period. *Id.* Thus, the total interest would be $68,333.33. *Id.* This interest, plus $100,000.00 equals $168,333.33.

### *Attorneys' Fees and Costs*

In its initial filings, Plaintiff asserted that this matter involved three law firms representing the Trustee. Special Counsel Richard Gerace has represented the Trustee since January 8, 2014 and incurred approximately $478,436.37 in attorneys' fees and costs through January 15, 2022. *Id.* The Trustee was also represented by McElroy, Deutsch, Mulvaney & Carpenter, LLP ("McElroy Deutsch") from January 11, 2016 to February 2019 and incurred approximately $130,269.91 in attorneys' fees and costs. *Id.* Finally, the Trustee was

represented by Becker LLC ("Becker") and incurred approximately $95,403.46 in attorneys'
fees and costs.  *Id.*  These firms yielded a <u>total</u> litigation cost of approximately $704,109.74.
Plaintiff provided that Plaintiff's counsel was ready to provide a copy of these charges and fees
without redactions for review in camera.  *Id.*

### *Defendants' Response to Calculation of Damages (ECF No. 118)*

On February 12, 2022, through counsel, Defendants filed Defendants' Response to
Plaintiff's Calculation of Damages.

### *Count One*

With respect to Count One, Defendants argue that due to market conditions including
a commercial market crash in 2008, North Park was not successful.  Defendants assert that
under the North Park Agreement, there is no time frame for North Park's special monthly
distribution of $7,000.  Defendants argue North Park only existed for 36 months from October
2007 to October 2010.  Defs.' Resp. 2, (ECF No. 118).   Therefore, when North Park ceased
to exist in October 2010, so did the special distribution of $7,000.  *Id.*  Defendants note the
Court determined that a total of $113,500 of payments were made in connection with the
North Park Agreement.  *Id.*  Therefore, $113,500 divided by $7,000 equals approximately
16.14 [sic] payments.  *Id.*  Defendants indicate the total amount of payments made, 16.14,
should be deducted from the total amount of months North Park was in operation, 36 months,
which results in North Park still owing 19.86  months of payments.  *Id.*  This equals
approximately $139,020 plus stated interest of $76,461 which totals $215,481.[6]  *Id.*

### *Attorneys' Fees and Costs*

---

[6] The Court notes a mathematical error that affected Defendants' calculations.  $113,500 divided by $7,000 equals
16.21 payments. 36 monthly payments owed minus 16.21 monthly payments made results in approximately 19.79
months of payments owed.  $7,000 multiplied by 19.79 equals $138,530.  The added interest of $76,461 makes the
total $214,991.

As for attorneys' fees, Defendants argue that the Plaintiff's calculations are just a stated amount and under case law,

> [b]efore awarding fees out of bankruptcy estate, the bankruptcy court will insist that counsel conscientiously set forth hours expended on each task and nature of services rendered at a level specificity that allows court to evaluate the application . . . every application for attorney fees in bankruptcy cases must include specific analysis of each task that compensation is sought for . . .

*In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 832 (Bankr. D. Vt. 1987). Therefore, Defendants argue that more specific information regarding attorneys' fees should be provided.

### Count Two

With respect to Count Two, Defendants request this Court find that the amount owed by Defendant Mehran Kohansieh on his personal guarantee is no more than $3,000 in missed payments plus interest of $750 totaling $3,750. Defendants argue that at trial Michael conceded he stopped writing the $1,000 monthly checks to the Debtor "[b]ecause after a few months we lost the other property". Trial Tr. 96, Nov. 22, 2019, (ECF No. 98); Defs.' Resp. 4, (ECF No. 118). Defendants argue that based on Michael's testimony, the word "few" should be construed to mean three (3). Defs.' Resp. 4 n.1, (ECF No. 118). Here, Defendants assert that under Iowa law, damages for breach of contract are limited to losses actually suffered by reason of the breach. If a loss results other than in the ordinary course, there would be no recovery unless it was foreseeable. *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 848 (Iowa 2010).

### *Count Three*

As for Count Three, Defendants argue liability for these damages should be apportioned fifty percent to each Defendant, Mehran Kohansieh and Michael Khakshoor. *Royal Indem. Co v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 849-50 (Iowa 2010). Defendants assert that nothing in their agreement provides for the Plaintiff to receive attorneys' fees and costs. Additionally, Plaintiff has provided insufficient information regarding the amount of attorneys' fees and costs.

### *Plaintiff's Reply to Defendants' Response to Plaintiff's Calculation of Damages (ECF No. 119)*

On February 22, 2022, through counsel, Plaintiff filed their Reply to Defendants' Response to Plaintiff's Calculation of Damages. In summation, Plaintiff contends that Defendants' Response is not really an objection but is an attempt to relitigate this case.

### *Counts One and Four*

Defendants' assert that "[t]here is no time frame for the North Park special distribution of $7,000.00 which means that when North Park ends so does the special distribution." Defs.' Resp. 2, (ECF No. 118). Plaintiff asserts that Defendants' argument essentially proves that the Defendants have never provided the Debtor with any reports on his investment in North Park even though such reports were required by the North Park Agreement. Plaintiff asserts that Plaintiff's damages are based on the trial testimony and exhibits which show the least amount owed by North Park. The outstanding principal for the period of February 1, 2009 through December 2013 is $413,000.00 plus 8% interest of $82,600.00 for a total of $495,600. Or, if the time is extended to the January 20, 2022, principal for the period from February 1, 2009 through January 20, 2022, of $1,092,000 plus 8% interest of $571,320 for a total of $1,663,320.

### *Count Two*

As for Count Two, Plaintiff argues that Defendants' response is not an objection but rather an attempt to relitigate this case.  Plaintiff asserts the Defendants are asking this Court to "conclude that the amount owed" by Mehran Kohansieh on his personal guarantee for the missed payments due under Section 9(c) of the River City Agreement "is not more than $3,000 with interest in the amount of $750 which totals $3,750."  Pl.'s Reply 4, (ECF No. 119).

### *Count Three*

With respect to Count Three, Plaintiff argues that this Court already ruled that under Section 2 of the River City Agreement, Mehran Kohansieh and Michael Khakshoor are jointly and severally liable for the sum of $100,000 plus costs and expenses of collection, including reasonable attorneys' fees.  Plaintiff argues that interest should be applied to the principal sum of $100,000.  Plaintiff cites to *Vasquez v. LeMars Mut. Ins. Co.*, 477 N.W.2d 404, 410 (Iowa 1991) (citing 22 Am. Jur. 2d Damages § 649, at 709-10 (1988)) to support their position that in the absence of an agreement to pay interest, it is implied by law as damages for not discharging a debt when it ought to be paid.

### *Attorneys' Fees and Costs*

In summation, Plaintiff argues that due to the complex nature of this litigation and the lengthy history, the total attorneys' fees and costs of $704,109.74 for the three firms involved in this litigation for the eight-year period from January 8, 2014 to January 15, 2022 are appropriate and should be granted.

### *Plaintiff's Memorandum Re: Pre and Post Judgment Interest Applicable to Defendants' Breach of Contract (ECF No. 120)*

On March 25, 2022, Plaintiff filed Plaintiff's Memorandum Re: Pre and Post Judgment Interest Applicable to Defendants' Breach of Contract.  Counsel argues that Plaintiff is entitled to

an award of pre and post judgment interest as well as attorneys' fees and costs. Counsel argues

that Plaintiff is entitled to an award of prejudgment interest at the highest rate and from the earliest

date applicable because the Defendants breached the contract with the Debtor almost as soon as

the Defendants took possession of the Debtor's $1.6 million.  However, Plaintiff did not provide

the Court with the date prejudgment interest should apply if the Court deems prejudgment interest

appropriate.

Plaintiff's position is that this Court has broad discretion to award prejudgment interest.

Plaintiff argues that the Third Circuit has held that "discretion must be exercised according to law,

which means that prejudgment interest should be awarded unless there is a sound reason not to do

so." *Nathan & Miriam Barnert Mem'l Hosp. Ass'n v. Onward Healthcare, Inc. (In re Nathan &*

*Miriam Barnert Mem'l Hosp. Ass'n)*, Nos. 07-21631 (DHS), 07-02261 (DHS), 2009 Bankr. LEXIS

5569, at *30-31 (Bankr. D.N.J. Oct. 5, 2009) (citing *Hechinger Inv. Co. of Del., Inc. v. Universal*

*Forest Prods. (In re Hechinger Inv. Co. of Del., Inc.)*, 489 F.3d 568, 579-80 (3d Cir. 2007)).

### North Park

Plaintiff argues that North Park, a limited liability company registered with the Secretary

of the State of Michigan, remains in existence and has recently engaged the services of Supreet

Parmar, Esq.  Mr. Parmar entered an appearance in this matter on February 1, 2022.  Notice of

Appearance, (ECF No. 116).  Plaintiff argues that the North Park Agreement as well as the River

City Agreement are clear and unambiguous with respect to liability as to breach, interest to be

applied, and the award of attorneys' fees and costs.

### North Park Agreement is Governed by Michigan Law

Plaintiff argues that the North Park Agreement is governed by Michigan law because

North Park is a limited liability company registered with the Secretary of State of Michigan.

Plaintiff cites to *Doe v. Henry Ford Health System* to support their position that the measure of damages for a breach of contract claim is "the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached."  308 Mich. App. 592, 602 (2014).

### *Prejudgment Interest is Governed by New Jersey Law*

Plaintiff argues that although the North Park Agreement is subject to Michigan law, New Jersey law applies to an award of prejudgment interest.  *See Gleason v. Norwest Mortg. Inc.*, 253 F. App'x 198, 203–04 (3d Cir. 2007) (noting that federal courts sitting in diversity must apply the law of the forum state to questions of process, including awards of interest).   Under New Jersey law, a trial judge in a contract action has discretion to award prejudgment interest in accordance with equitable principles.  *Cnty. of Essex v. First Union Nat'l. Bank*, 186 N.J. 46, 61 (2006); *Gleason*, 253 F. App'x at 204.  Plaintiff asserts that:

> [t]he basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.

*Cnty. of Essex*, 186 at 61.

### *River City*

Plaintiff asserts that River City is a corporation organized under the law of the State of Iowa.  Counsel refers to paragraph 2 of the River City Agreement,

> In the event Assignors fail to comply with the terms and conditions of the aforementioned Amended and Restated Assignment and Assumption of Stock…then Assignors [Mehran Kohansieh and Michael Khakshoor], jointly and severally, hereby agree to personally guarantee the return of $100,000 to Assignee [Sakhe] within (30) days.  Assignors shall be responsible for the payment of any costs and expenses for collections of said sums due, including but not limited to reasonable attorney's fees.

Ex. 2 at 4, (ECF No. 120).  Plaintiff asserts that:

[n]either federal nor bankruptcy statutes contain a general statute granting
prejudgment interest. Prejudgment interest is generally subject to the Court's
discretion with the Court consulting state law if it is a source of the underlying
claim. The choice to award prejudgment interest is usually guided by principles
of reasonableness and fairness.

*In re Advanced Custom Builders, L.L.C.*, No. ADV 10-09081, 2011 WL 4498922, at *2

(Bankr. N.D. Iowa Sept. 27, 2011). "Under 28 U.S.C. § 1961, '[i]nterest shall be allowed on

any money judgment in a civil case recovered in a district court.' This statute applies to

bankruptcy proceedings as the Bankruptcy Court is part of the District Court." *Id.* at *1 (citing

*In re Pester Ref. Co.*, 964 F.2d 842, 849 (8th Cir. 1992)). Plaintiff argues that the Defendants

breached the contract with the Debtor almost as soon as they had possession of some of the

$1.6 million. Therefore, Plaintiff is entitled to prejudgment interest at the highest rate from the

earliest date applicable. As to post judgment interest, "a prevailing party in bankruptcy court

is automatically entitled to post-judgment interest regardless of whether it is referenced in the

court's order", pleadings, or monetary judgment. *Id.* (citing *In re Keefe*, 401 B.R. 520, 526

(B.A.P. 1st Cir. 2009)).

### *Attorneys' Fees and Costs*

Counsel provided an itemization of fees and costs incurred in connection with this

matter. The firms that represented the Trustee were retained by Order of this Court.[7] Three

documents were submitted as Exhibit 3, Exhibit 4 and Exhibit 5 that itemize fees and costs

incurred by the Plaintiff's attorneys. Pl.'s Mem. 3 (ECF No. 120). Exhibit 3 from McElroy,

Deutsch, Mulvaney & Carpenter, LLP which shows the total balance due is $135,488.26 for

---

[7] Order Authorizing Retention of McElroy, Deutsch, Mulvaney, & Carpenter, LLP, (ECF No. 11), Case No. 15-32238, January 20, 2016; Order Authorizing Retention of Gerace Law Office as Special Counsel, (ECF No. 16), Case No. 15-32238, February 25, 2016; Order Authorizing Retention of Becker LLC, (ECF No. 67), Case No. 15-32238, March 20, 2019.

services rendered from January 11, 2016 to February 23, 2022.  Ex. 3 at 1, 34, 35, (ECF No. 120-3).  This is based on an itemization of fees of $130,555.00 and disbursements of $4,933.26.  *Id.* at 35.  Exhibit 4 is an itemization of the attorneys' fees of $93,187.50 and costs of $2,215.96 from Becker LLC which total $95,403.46 for services rendered from February 22, 2019 to December 28, 2021.  Ex. 4 at 4, 19, 20, (ECF No. 120-4).  Exhibit 5 is an itemization of the fees of $318,690.75 and costs of $16,860.81 from the Gerace Law Office for a total of $335,551.56 for services rendered from November 25, 2015 to March 9, 2022.  Ex. 5 at 2, 17, (ECF No. 120-5).  The total fees and costs are $566.443.28—legal fees of $542,433.25 and costs of $24,010.03.

### *Defendants' Response to Calculation of Damages (ECF No. 121)*

On March 26, 2022, through counsel, Defendants Mehran Kohansieh and Michael Khakshoor filed a response captioned Defendants' Response to Calculation of Damages.

### *North Park Agreement – Counts One and Four*

As to Counts One and Four, counsel for the Defendants argues that the Court should consider any award of the $7,000 special monthly distributions to the extent the North Park Agreement permits.  Counsel argues that these special monthly distributions were contingent on the viability of North Park, which ended when it lost the North Park Property.  Therefore, counsel argues that the calculation of damages with respect to Counts One and Four should be limited to the time period when North Park was financially viable and operational.

To support this position, counsel directs the Court's attention to Article 4, Section 4.2 of the North Park Agreement which defines distributions, in part, as "available funds" and states that "[t]o the extent a Member shall have a negative capital account balance, there shall

be a qualified income offset, as set forth in Treasury Regulations 1.704-1(b)(2)(ii)(d)." Defendants argue that this provides a mechanism for what would happen if North Park had a negative capital balance; the apportioned loss would become a tax deduction.

Counsel also argues that such monthly special distributions are limited by Article 4, Section 4.5 which states: "[t]heses [sic] above-stated special distributions shall be considered advances against Member profits and a strict accounting shall be made as to each Members' special distribution amounts.  A periodic review . . . shall be made to determine if the special distributions are viable or to be readjusted accordingly."

### *River City – Count Two and Three*

### *Count Two*

Counsel argues that the Court should limit the award of special monthly distributions under the River City Agreement.  Specifically, counsel argues that the River City Agreement, while it was executed, did not take effect because the Members never obtained the property associated with the River City Agreement.  Counsel highlights Section 9(c) of the River City Agreement which states "the special distribution to Sakhe shall be paid only if there is remaining net profits available after satisfying all accounts payable, bills, expenses, costs, deposit into reserves and allocations for capital and tenant improvements."  Counsel argued that based on Defendant Khakshoor's testimony—that the special monthly distribution payments for River City were only paid for a few months—damages should be limited to these few months.  Trial Tr. 30:1–3, Nov. 22, 2019, (ECF No. 98).  This equates to damages in the amount of $3,750, which is $3,000 for three missed monthly payments and interest, if determined to be owed, of $750.

### *Count Three*

With respect to Count Three, Defendants' counsel argues that liability should not be apportioned jointly and severally and interest should not be awarded. Counsel cites to the Comparative Negligence Act. N.J. Stat. Ann. § 2A:15-5.1 – 5.3.

Counsel also cites to *Erny*, where the court held that:

[U]nder New Jersey's joint and several liability statutes, N.J. Stat. Ann. § 2A:15-5.3, a defendant who is less than sixty percent liable cannot be held responsible for more than his percentage allocation of liability for noneconomic damages. The statute thus allows protection from joint and several liability for defendants not substantially at fault.

171 N.J. at 100. Defendants argue that it would not be unreasonable to apportion each Defendant fifty percent (50%) of the liability for the amount the Court determines is due and owing. Again, Defendants also argue that nothing in the River City Agreement permits interest.

### *Liquidated Damages – Prejudgment Interest*

Counsel for Defendants argues that any imputation of prejudgment interest in this case would be punitive because North Park failed as a result of the financial crash of 2008. North Park lost its largest tenant. Counsel argues that same logic applies to River City; River City was a failed investment, therefore no prejudgment interest should be awarded. If the Court were to grant prejudgment interest, it should be awarded and commence on June 7, 2016, the date the adversary complaint was filed in this Court, and at the rate specified in 28 U.S.C.A. § 1961. Counsel asserts that under New Jersey law, an "award of pre-judgment interest in a contract case is within the sound discretion of the trial court." *Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 390 (2009); *Promotion in Motion, Inc. v. Beech-Nut Nutrition Corp.*, 2012 U.S. Dist. LEXIS 150364. At *5–6 (D.N.J. Oct. 17, 2012). Counsel also notes that the Third Circuit Court of Appeals has stated:

> Under New Jersey law, a successful plaintiff in an action for breach of contract is not entitled to prejudgment interest as a matter of right where damages are unliquidated. Indeed, the rule appears to be that, unless considerations of justice and fair dealing clearly demand a different result, "interest should not be allowed where the damages are unliquidated and not capable of ascertainment by mere computation, or where a serious and substantial controversy exists as to the amount due under a contract."

*Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*, 670 F.2d 1304, 1314-15 (3d Cir. 1982) (Rosenn, J., dissenting) (citing *Jardine Estates, Inc. v. Donna Brook Corp.*, 42. N.J. Super. 332, 341 (App. Div. 1956)).

Counsel further notes that the Tenth Circuit has stated that "the current bankruptcy code does not specify whether the Court may award prejudgment interest to a prevailing trustee." *Turner v. David, Gillenwater & Lunch (In re Inv. Bankers)*, 4 F.3d 1556, 1566 (10th Cir. 1993).   Defendants note that Bankruptcy Courts have discretion to award prejudgment interest to a trustee in a fraudulent conveyance action and award prejudgment interest to compensate the prevailing party for the lost time value of money.  *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1338 (8th Cir. 1991), *aff'd sub nom. Reves v. Ernst & Young*, 507 U.S. 170 (1993); *Sigmon v. Royal Cake Co. (In re Cybermech, Inc.)*, 13 F.3d 818, 822 (4th Cir. 1994); *In re Inv. Bankers, Inc.*, 135 B.R. 659, 665 (Bankr. D. Colo. 1991), *aff'd*, 161 B.R. 507 (D. Colo. 1992), *aff'd*, 4 F.3d 1556 (10th Cir. 1993); *NLRB v. Int'l Measurement & Control Co.*, 978 F.2d 334, 336–37 (7th Cir. 1992).

### **Defendants' Memorandum in Opposition to Plaintiff's Supplemental Memorandum in Support of Pre and Post Judgment Interest as to the Defendant's Breach of Contract (ECF No. 122)**

Counsel for the Defendants also filed Defendants' Memorandum in Opposition to Plaintiff's Supplemental Memorandum in Support for Pre and Post Judgment Interest as to

the Defendant's Breach of Contract.  Counsel argues that only reasonable attorneys' fees should be awarded, and no prejudgment interest should be awarded.  Alternatively, counsel requests this Court hold a hearing on the Plaintiff's Calculation of Damages.

### *Attorney's Fees and Costs*

Defendants argue that Plaintiff in this bankruptcy case must include specific analysis of each task that compensation is sought for, since when different services are lumped together, the court cannot determine whether time allotted for each is reasonable.  *In re S.T.N. Enters., Inc.*, 70 B.R. 823, 833 (Bankr. D. Vt. 1987*)*. This Court notes that *In re S.T.N. Enters., Inc.* was partially overturned by *In re Fibermark, Inc.* which stated that,

> [T]hroughout the administration of the Debtors' estate in this case, the Court has revisited, expanded, and in some instances, overruled certain of the criteria set forth in *S.T.N.* due in large part to the 1994 revisions to the Bankruptcy Code, and developments in technology and local practice over the course of the last nineteen years. In the interest of judicial economy, and consistent application of the enunciated principles governing allowance of professional fees in this District, the Court addresses the Final Applications for allowance of professional fees and reimbursement of expenses in this memorandum of decision and catalogues the Court's reiteration, expansion, modification, and overruling of the *S.T.N.* standards.

*In re Fibermark, Inc.*, 349 B.R. 385, 393 (Bankr. D. Vt. 2006) (footnote omitted).

Defendants argue that attorneys' fees and costs should be apportioned to the fees incurred  against that individual Defendant and that there is no delineation between reasonable attorneys' fees and costs or reimbursement of expenses as to the Defendants that remain and the Defendants whose claims against them were dismissed by this Court.   The Defendants argue that the Plaintiff's Amended Complaint sought compensatory damages, avoidance of fraudulent transfers,  accounting, judgement in the amount of $1.5 million pursuant to 11 U.S.C. §§ 544, 550, common law fraud, conspiracy to commit fraud, breach of

fiduciary duty, negligent misrepresentation, unjust enrichment and common law conversion, piercing the corporate veil of North Park, and punitive damages.  This Court rejected all of these claims except the four breach of contract claims.  Counsel cites to *Empower Our Neighborhoods v. Guadagno* in which the court said "[i]f claims are centered on common issues but are divisible, the fees should be apportioned to ensure no defendant is liable for more than actually incurred in proceeding against him."  453 N.J. Super. 565, 583 (Super. Ct. App. Div. 2018) ( c i t i n g  *Jones v. Espy*, 10 F.3d 690, 691 (9th Cir. 1993)).  Defendants argue that the Court, when determining the appropriate fee award to a prevailing party, should award fees to the extent the litigation was successful and the fees can be divided according to the relative culpability of the defendants or based on the time to litigate as to each.  *See Legal Def. Grp. v. Adams*, 657 F.2d 1118, 1125–26 (9th Cir. 1981); *Council for Periodical Distribs. Assoc. v. Evans*, 827 F.2d 1483, 1488 (11th Cir. 1987).

### *Prejudgment Interest*

As to prejudgment interest, Defendants assert that prejudgment interest can be awarded in a breach of contract claim at the Court's discretion in accordance with equitable principles. *Cnty. of Essex*, 186 N.J. at 61.

### *Plaintiff's Reply to Defendants' Opposition to Plaintiff's Memorandum Re: Pre and Post Judgment Interest and Fees and Costs Applicable to Defendants' Breach of Contract (ECF No. 123)*

On April 14, 2022, counsel for the Trustee filed Plaintiff's Reply to Defendants' Opposition to Plaintiff's Memorandum Re: Pre and Post Judgment Interest and Fees and Costs Applicable Defendants' Breach of Contact.  In sum, counsel for the Trustee argues that: (1) there is no legal basis to contradict the Court's written opinion in this matter as the Court relied on the explicit contractual language set forth in the North Park and River City

Agreements and (2) Defendants' argument objecting to Plaintiff's fees and costs lack substance. Counsel for the Trustee takes the position that the "Defendants have unnecessarily and obstreperously litigated this case in this Court since February 2016, arguably knowing that their breach of contract was deliberate and indefensible." Pl.'s Reply 4, (ECF No. 123). Additionally, while not part of the requested attorneys' fees and costs this litigation actually began in 2011 in the New York Supreme Court and continued for years until the Sakhe bankruptcy was filed in this Court in 2015.[8]

### *North Park*

The Trustee argues that this Court previously found North Park breached Counts One and Four of the North Park Agreement. It is undisputed that in October 2007, the Defendants received from the Debtor $1.5 million in connection with the North Park Agreement (in addition, in January 2008 Debtor transferred $100,000 to River City). Trial Tr. 29:4–13, Nov. 22, 2019, (ECF No. 98). The Trustee argues that the Debtor received no more than $123,700 of payments in connection with the North Park Agreement. Based on his calculations, the Trustee asserts that the Debtor did not receive a total of $1,376,300 of monthly special distribution payments that were due and owing to him (this total is derived from the $1,500,000 transferred by Debtor to North Park minus $123,700 in repaid funds, which equals $1,376,300). The Trustee cites to the provisions of the North Park Agreement which state in relevant part:

> 4.3 **Special Distribution to Sakhe**. Notwithstanding the terms contained herein, the Managers and LLC shall commit to a special monthly distribution of seven thousand ($7,000.00) dollars to Farooq Sakhe as an advance to profit distribution on the first day of each calendar month. The failure to tender the aforementioned

---

[8] *See In re Sakhe*, 2021 WL 5999195, at *1 ("[O]n December 21, 2011, Mr. Farooq Sakhe (the "Debtor") filed a lawsuit in the Supreme Court of the State of New York, County of New York . . . *Farooq Sakhe v. North Park Realty Management, LLC, Michael Khakshoor and Mehran Kohansieh a/k/a Mike Kohansieh or Mike Kohen*"). The full procedural history of the matter is found in the Court's prior Opinion.

payments to Sakhe by the Managers and LLC within ten (10) calendar days shall result in a default penalty interest of 8% per annum on all outstanding balances due and owed to Sakhe. **In the event the Managers and LLC fails to pay Sakhe, then the LLC shall pay Sakhe's costs and expenses of collection including but not limited to reasonable attorney's fees.**

. . .

4.5 **Limitations to Special Distributions**. These above-stated special distributions shall be considered advances against Member profits and a strict accounting shall be made as to each Members' special distribution amounts. A periodic review after three (3) months or every calendar quarter shall be made to determine if the special distributions are viable or to be readjusted accordingly. **However, in no circumstances shall Farooq Sakhe's Special Distribution be less than $7,000 per month.**

Ex. 1, Pl.'s Am. Calculation of Damages 5, (ECF No. 117) (emphasis added).

### *River City*

The Trustee also cites to Section 2 and Section 9(c) of the River City Agreement. These sections provide:

### *Section 2 of the River City Agreement*

Subject to Zetterlund's retention of a Fifty-One percent (51%) interest in the company, which interest will automatically terminate and revert to Assignors and Assignee upon Zetterlund's receipt of the balance due from Assignors and Assignee, and Zetterlund's being released from all financial responsibility and debt of the Company, including release of any personal guarantee for the mortgage with M&T Bank subject to the foregoing, Assignors hereby sell, assign, transfer, convey and set over to Assignee the Assigned Interest, to have and hold the Twenty Percent (20%) Assigned Interest unto Assignee, its successors and assigns forever, it being understood that this Assignment shall include every right, without limitation, that Assignors has or may have in the Assigned Interest and in that portion of the Company and under the Company Documents which is represented by the Assigned Interest. In conjunction herewith, Assignors will make available for inspection all books, records, and other property and assets of the Company, whether tangible or intangible, upon Assignee's reasonable request for access to said documents. In the event Assignors fail to comply with the terms and conditions of the aforementioned Amended and Restated Assignment and Assumption of Stock including but not limited to the obligated payments to Zetterlund or failure to obtain the release of Zetterlund's obligation and personal guarantee to M&T Bank within the time period as stated in the Amended and Restated Assignment and Assumption of Stock, then **Assignors, jointly and severally, hereby agree to personally guarantee the**

**return of $100,000.00 to Assignee within thirty (30) days. Assignors shall be responsible for the payment of any costs and expenses for collection of said sums due, including but not limited to reasonable attorney's fees.**

Ex. 2, Pl.'s Am. Calculation of Damages 3-4, (ECF No. 117) (emphasis added).

### Section 9(c) of the River City Agreement

Special Distribution to Sakhe. Notwithstanding the terms contained herein, the Company shall commit to a special monthly distribution of one thousand ($1,000.00) dollars to Farooq Sakhe as an advance to profit distribution on the 30th day of January 2008 and continuing monthly on the fifth day of each calendar month thereafter. Beginning as of February 5, 2008, and continuing through June 2008, the special distribution to Sakhe shall be paid only if there is remaining net profits available after satisfying all accounts payable, bills, expenses, costs, deposit into reserves and allocations for capital and tenant improvements. In the event distribution is not made to Sakhe, then said monthly distributions shall be deferred until such time as the funds become available and shall be treated as priority over Assignors distribution. **Beginning on July 5, 2008, and continuing thereafter, the special distribution to Sakhe shall be made as a regular expense of the Company, regardless of the availability of net profits and payment to be personally guaranteed by Kohansieh.**

Ex. 2, Pl.'s Am. Calculation of Damages 5, (ECF No. 117) (emphasis added).

The Trustee here notes that the Debtor was to be paid the special monthly distribution payments of $1,000 "regardless of the availability of net profits and payment to be personally guaranteed by Kohansieh." Pl.'s Reply 3, (ECF No. 123). Counsel for the Trustee asserts that the Debtor received no more than $12,000 in connection with the River City Agreement. *Id.* at 5.

### Legal Argument - Prejudgment Interest

The Trustee argues that the Bankruptcy Court for the District of New Jersey has held that the award of prejudgment interest is within the sound discretion of the Court. *In re Nathan & Miriam Barnert Mem'l Hosp. Ass'n*, No-07-21631 (DHS), 2009 WL 3230789 at *11 (Bankr. D.N.J. October 5, 2009). Additionally, counsel for the Trustee argues that prejudgment interest

should be awarded unless there is a sound reason not to do so.  *In re Hechinger Inv. Co. of Del., Inc.*), 489 F.3d 568, 580 (3d Cir. 2007).

### North Park

Counsel for the Trustee argues that although Michigan law applies to the North Park Agreement, New Jersey procedural law applies to the award of prejudgment interest.  *See Gleason v. Norwest Mortg, Inc.*, 253 F. App'x 198, 203-04 (3d Cir. 2007); *see In re Johnson*, 485 B.R. 642, 647 (Bankr. D. Colo. 2013).  The Trustee relies on *Cnty. of Essex* to argue that the Court must consider that the Defendants had use of the amount that was due and owing and the Plaintiff did not.  Therefore, "the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled." *Cnty of Essex*, 186 N.J. at 61.

### River City

The Trustee argues that Iowa law governs the River City Agreement.  To support their position, counsel for the Trustee cites to *In re Advanced Custom Builders, L.L.C.*, No. ADV 10-09081, 2011 WL 4498922 (Bankr. N.D. Iowa Sept. 27, 2011) in arguing that prejudgment interest is generally subject to the Court's discretion, with the Court consulting state law if it is the source of the underlying claim.  The Trustee cites to *In re Pester Refining Co.* to argue "'interest shall be allowed on any money judgment in a civil case recovered in a district court.' Because a bankruptcy court is part of the district court, the statute applies to bankruptcy proceedings." 964 F.2d at 849 (internal citations omitted).  Finally, the Trustee argues that the terms of an agreement that explicitly provides for interest and attorneys' fees in the event of a default is enforceable and will be disturbed only in the clear case of an abuse of discretion. *See Barry H. Gertsman & Co. v. 5218 Atl. Ave. Assocs., LLC*, No. A-1528-18T1, 2019 WL 6713410 (N.J.

Super. Ct. App. Div. Dec. 10, 2019); *Yueh v. Yueh*, 329 N.J. Super. 447, 466 (App. Div. 2000); *Barr v. Barr*, 418 N.J. Super. 18, 46 (App. Div. 2011); *Litton*, 200 N.J. at 386.   Where New Jersey disfavors the shifting of attorneys' fees, fees are allowed when provided for in a contract. *Litton*, 200 N.J. at 385.    The Trustee here argues that the North Park and River City Agreements expressly provided for attorneys' fees and as such fees may be awarded. *See Chwiej v. 193 Concord Drive, LLC*, 2020 WL 3393497, (N.J. Super. Ct. App. Div. June 19, 2020), *cert. denied*, 244 N.J. 358 (2020).

The Trustee argues that Defendants' suggestion that attorneys' fees be parsed out piecemeal is without support. *See Donovan v. Dragados*, No. CV09409KSHCLW, 2015 WL 7295943, at *2 (D.N.J. Nov. 17, 2015).   The Trustee argues that different services are not lumped together, as Defendants argue, because there was only one service—litigation services.   The itemized list of attorneys' fees and costs attached to the Plaintiff's March 25, 2022 Memorandum demonstrates that different services were not lumped together.

Trustee also posits that the Plaintiff's claims for relief involved a common core of facts based on related legal theories such that the fee award should not be reduced simply because the Plaintiff failed to prevail on every claim raised in the lawsuit. *See, e.g., S.C. by & through M.C. v. Riverview Gardens Sch. Dist.*, No. 18-4162-CV-C-NKL, 2020 WL 5262267, at *11 (W.D. Mo. Sept. 3, 2020), *aff'd sub nom. Scott C. by & through Melissa C. v. Riverview Gardens Sch. Dist.*, 19 F.4th 1078 (8th Cir. 2021).

> [W]here 'the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories, . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee.'

*Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

The Trustee argues that the Plaintiff's claims for relief involved a common core of facts and related legal theories. The North Park and River City Agreements provided in certain instances for the payment of the fees and costs associated with the Plaintiff's effort to obtain these judgments, which presently total $566,443.36 plus continuing interest, fees, and costs until the judgments are paid. *Compare* Ex. 1, Mot. for Leave to File an Am. Compl. 88, (ECF No. 6) "In the event the Managers [of North Park] and LLC fails to pay Sakhe, then the LLC shall pay Sakhe's costs and expenses of collection including but not limited to reasonable attorney's fees.") *with* Ex. 3, Mot. for Leave to File an Am. Compl. 100, (ECF No. 6) ("Assignors [the Defendants] shall be responsible for the payment of any costs and expenses for collection of said sums due, including but not limited to reasonable attorney's fees.").

### *July 21, 2022, Hearing*

On July 21, 2022, the Court heard oral argument as to the calculation of damages in this matter. As noted above, the parties acknowledged the extensive procedural history and consequently, significant legal fees were incurred in connection with this matter. The parties conceded the Court's prior opinion was binding on this Court and thus the instant issue was to what extent damages should be awarded. See *In re Sakhe*, 2021 WL 5999195 (Bankr. D.N.J. Dec. 17, 2021).

Mr. Gerace appeared on behalf of the Trustee. Mr. Farinella appeared on behalf of the Defendants.

Mr. Gerace stated this case involves an original $1.5 million contribution to North Park. He said that North Park was a real estate investment company managed by Defendants Mehran Kohansieh and Michael Khakshoor. Michael and Mehran are related by blood and/or

marriage to each other.  The original investment of $1.5 million to North Park was made in September 2007.  Mr. Sakhe then made an additional contribution of $100,000 to River City.  Michael and Mehran also managed this investment.  Mr. Gerace proceeds to state that Michael nor Mehran never created  capital accounts.  Within a year of these investments, the special distribution payments to Mr. Sakhe—as required by the North Park and River City Agreements—stopped.  Counsel for the Trustee stated that in total, Mr. Sakhe received less than 10% of his money back in special distributions.  Counsel for the Trustee states these investments were supposed to be guaranteed special distributions.

Due to this failure to provide Mr. Sakhe with the special distribution payments, counsel for the Trustee commenced this adversary proceeding against North Park, Mehran, Michael, and Sion Nobel.  Mr. Gerace asserts that within twenty-four hours of Mr. Sakhe sending the $1.5 million to Mehran and Michael, these funds were transferred to Sion Nobel.  As stated by Mr. Gerace, Sion Nobel is the uncle of Michael and Mehran's wives.  Mr. Gerace asserted that after a two-day trial, this Court found in favor of the Trustee on the breach of contract claims.  The remaining counts of the Amended Adversary Complaint were denied by this Court.  *See In re Sakhe*, 2021 WL 5999195, at *58.

These claims were set forth in Count One and Four of the Amended Adversary Complaint and pertain to North Park.  Additionally, the Court found in favor of the Trustee and against Mehran and Michael, individually or jointly and severally, for Counts Two and Three of the Amended Adversary Complaint, with respect to River City.

### *Trustee's Position Regarding Attorneys' Fees and Costs*

Mr. Gerace notes that the North Park Agreement permits attorneys' fees and costs.  Therefore, attorneys' fees and costs should be awarded as it pertains to Counts One and Four.

Mr. Gerace referred to the Court's previous decision regarding attorneys' fees and costs: "judgment shall be entered against North Park and in favor of the Trustee for all amounts past due and owing to the Debtor plus default penalty interest at a rate of 8% per annum for all amounts past due and reasonable attorneys' fees and costs." *Id.* at *41. Mr. Gerace asserts that Count Two of the Amended Adversary Complaint is essentially the same as the Court's findings for Count One in so far as the Court ruled "judgment shall be entered in favor of the Trustee and against Mehran in the amount of the $1,000 monthly special distribution payments that are due and owing to the Debtor." *Id.* at *44. Additionally, Mr. Gerace asserts that both Mehran and Michael personally guaranteed the return of $100,000 and the Court's previous decision awarded attorneys' fees and costs.

Mr. Gerace noted that the litigation in this matter started in 2016 and the Adversary Complaint was filed in 2017, which resulted in approximately $550,000 in attorneys' fees for the three law firms involved in this matter. These fees were calculated through January 2022.

Mr. Gerace said that Eric Perkins, Esq. had originally worked for McElroy Deutsch and then transferred to the Becker firm.

The Court questioned the total attorneys' fees that were requested by counsel in connection with this matter. As noted by the Court, and agreed to by Mr. Gerace, counsel originally requested approximately $704,000 in attorneys' fees and costs. Mr. Gerace provided that to expedite this matter, he reviewed the fee entries to ensure there was no duplication and reduced the fees from $704,000 to approximately $550,000.

Mr. Gerace asserted that he filed a reply on April 14, 2022 that includes the amended fees and costs for attorneys at Exhibits 3 and 5. Pl.'s Reply, (ECF No. 123). These documents

show the total fees and costs requested are $566,443.36[9] for the three firms. An itemization

of the attorneys' fees are included in this filing. Mr. Gerace confirmed that the itemization filed

on March 25, 2022 are the fees associated with the firms that worked in connection with this

matter. Pl.'s Mem. 3, (ECF No. 120).

### *Trustee's Position Regarding Counts One and Four*

The Court questioned Mr. Gerace regarding the calculation of the $7,000 special monthly

distributions that still remain due and owing. The Court asked Mr. Gerace to explain what is

represented by the time frames for the two different calculations of damages in connection with

the $7,000 special monthly distributions that remain due and owing and are set forth in the

Trustee's filings.

Mr. Gerace provided that the Adversary Complaint was filed in 2016 and he was unsure as

to how the Court would handle the continued failure of North Park to pay the special monthly

distributions. Therefore, Mr. Gerace provided two calculations of damages are it pertains to the

$7,000 monthly special distributions. The first calculation is based on the $7,000 monthly

distribution payments deemed to be due and owing from February 1, 2009 until the filing of the

Adversary Complaint in June 2016. As for the second calculation, Mr. Gerace asserted that North

Park continues to breach its obligations by failing to tender the $7,000 special monthly

distributions through 2022. The Trustee's position is that the breach of the North Park Agreement

continues and that North Park still exists.

The Court notes the first calculation of damages pertains to the period of time from

February 1, 2009 to December 2013. Mr. Gerace referred to his February 7, 2022 letter to the

---

[9]  The Court notes a minor clerical error of $.08 in the calculation of the amounts due for  total fees and costs. The
Plaintiff's stated amount is $566, 443.36  and the correct amount is $566,443.28  *See* Pl.'s Mem., (ECF No. 120) and
Pl.'s Reply 12, (ECF No. 123).

Court.  Pl.'s Am. Calculation of Damages, (ECF No. 117).   In this  letter, the Trustee requests a

calculation of damages for sixty months.   Mr. Gerace asserted that damages were requested

through December 2013 because the Trustee originally believed that North Park ceased to exist as

of December 2013.  However, at this time, Mr. Gerace stated that the Trustee believes North Park

continues to operate as of the date of the hearing.  Therefore, North Park continues to breach the

North Park Agreement by failing to tender the $7,000 monthly special distribution payments to

Mr. Sakhe.  Mr. Gerace indicated that if this Court determines it will assess damages through

December 2013, the original 60-month period set forth in the Complaint, the Trustee would accept

such a determination.

Mr. Gerace asserts that with respect to Counts One and Four, the Trustee would be satisfied

with a judgment entered for damages calculated through December 2013.

### *Trustee's Position Regarding Count Two*

With respect to Count Two of the Amended Adversary Complaint, Mr. Gerace asserts

that under the River City Agreement, the special monthly distribution of $1,000 was due and

owing from February 1, 2009 to December 2013.  Therefore, a total of $59,000 plus interest at

the rate of 5% per year in accordance with Iowa law is due and owing. Mr. Gerace calculates

the interest to be $7,129.16.  Mr. Gerace asserts that 5% interest is permissible under Iowa

law and the River City Agreement.  Mr. Gerace stressed that the Trustee is limiting his

requested relief to the terms of the River City Agreement.  Therein, Mehran personally

guaranteed the $1,000 payments.

Mr. Gerace noted that there was testimony that the $1,000 monthly distribution

payments stopped in February 2009.  Mr. Gerace also stated that the sixty-month period of

31

February 1, 2009 to December 2013 reflects the Trustee's belief that River City stopped operating in December 2013.

### Trustee's Position Regarding Count Three

Count Three is judgment in favor of the Trustee and against Mehran and Michael for the sum of $100,000, based on the breach of the River City Agreement.  The amount of $100,000 is a sum certain in the River City Agreement.  Additionally, Mr. Gerace stated that there is no question that Mehran and Michael personally guaranteed the $100,000.  Mr. Gerace asserted that the rate of 5% interest under Iowa law applies to the $100,000 and therefore Mehran and Michael jointly and severally are liable for a total of $127,918.90.  This is reflective of the period of February 1, 2009 to December 2013.

### Trustee's Position Regarding Prejudgment Interest

The parties agree that prejudgment interest is determined by the forum state.  Mr. Gerace argued that under New Jersey law, prejudgment interest in breach of contract cases is governed by equitable principles.  Mr. Gerace asserted that the basic consideration is that the defendant had use of the Plaintiff's money and did not return it, and that prejudgment interest is awarded at the Court's discretion and based  in part on how the breach of contract occurred. *Cnty. of Essex*, 186 N.J. 46, 61 (2006).  Mr. Gerace also noted that the Third Circuit has held that this Court has discretion  in awarding prejudgment interest, whereas post judgment interest is awarded as a matter of law under 28 U.S.C. § 1961. *In re Hechinger*, 489 F.3d at 579.

### Defendants' Argument

Mr. Farinella argued that the Plaintiff's calculation of damages does not address the Court's findings in *In re Sakhe*, 2021 WL 5999195 (Bankr. D.N.J. Dec. 17, 2021).  Mr. Farinella notes that the Adversary Complaint was dismissed against Defendants Yousef Khakshoor and Sion Nobel.

32

### *Defendants' Position Regarding Counts One and Four*

Mr. Farinella asserts that the North Park Agreement does not specify a timeframe by which the $7,000 monthly special distributions should be paid. Mr. Farinella argues that the $7,000 monthly special distributions should end when North Park ceased to exist. Mr. Farinella argues that the Defendants paid approximately $113,500 of payments which equate to some 16.21 months of payments. Therefore, Defendants owe some 19.79 months of payments which equals $138,530.00 plus interest. Mr. Farinella asserts that North Park operated for a period of only thirty-six months, from October 2007 to October 2010.

Mr. Farinella argues that there was no evidence at trial or any indication that North Park continued to operate after October 2010 and that the Trustee had the burden to demonstrate that North Park continued to operate. Mr. Farinella further argues that North Park was a corporation that operated a mall. Therefore, when the mall failed, North Park ceased to operate. Mr. Farinella further argued that no evidence was produced at trial to refute that when the mail failed, North Park ceased to operate. This is also when the monthly special distributions stopped. Mr. Farinella concedes that almost 20 months of special monthly distribution payments—or more specifically, 19.79 months of payments—are due and owing.

### *Defendants' Position Regarding Attorneys' Fees and Costs*

Mr. Farinella argued that while reasonable attorneys' fees and costs may be awarded in connection with the breach of the North Park Agreement, the amount of attorney's fees should be reduced. Mr. Farinella argues that the attorneys' fees and costs are not apportioned to the specific breach. Mr. Farinella argues that the Adversary Complaint included allegations of fraudulent transfer, piercing the corporate veil, breach of fiduciary duty, breach of good faith and fair dealing, and punitive damages. These counts were not proven by the Trustee and dismissed by the Court.

The Court determined based on the evidence at trial that the only relief proven was in connection with the breach of contract claims as set forth in Counts One through Four of the Amended Adversary Complaint.

Mr. Farinella argues that in this instance there is separate liability as to each of the counts in the Amended Adversary Complaint, therefore attorneys' fees should be limited and apportioned to each count and the breach of contract claims.

### *Defendants' Position Regarding Count Two*

Mr. Farinella argues that under Iowa law damages that are recoverable for breach of contract are limited to those losses actually suffered by reason of the breach and must relate to the nature and purpose of the contract and damages for breach of contract must have been in contemplation of the parties.  No recovery under a breach of contract is allowed outside the ordinary course of events unless the breach was foreseeable, special circumstances existed, and a party had reason to know. *Royal Indem. Co. v. Factory Mut. Ins. Co.,* 786 N.W.2d 839, 848 (Iowa 2010).  The testimony at trial showed North Park and River City were investments that failed because of the circumstances that occurred in the 2008 financial crisis.  Defendants urge that while the record does not provide the exact date on which Mr. Sakhe stopped receiving these $1,000 special monthly distributions, under Section 9(c) of the River City Agreement these distributions were personally guaranteed by Mehran Kohansieh.

Additionally, Michael was the only person who could write the checks for these $1,000 special monthly distributions.  Mr. Farinella stated that the testimony at trial showed the Debtor only received these special monthly distributions for a "few months" and the testimony demonstrates that no more than three months of payments should be determined to be due and

owing or a total of $3,000.00 with interest of $750.00. Defendants also argue that attorneys' fees and costs are not provided for under Section 9(c) of the River City Agreement.

### *Defendants' Position Regarding Count Three*

Mr. Farinella concedes that Defendants' analysis comports with Mr. Gerace's position that $127,918.90 is due and owing in connection with Count Three, breach of Section 2 of the River City Agreement. Mr. Farinella asks that this Court, however, hold Mehran and Michael each individually liable for fifty percent of this amount. The River City Agreement provides that Mehran and Michael be held jointly and severally liable. Mr. Farinella argues that there is no language in the River City Agreement that permits interest and that the River City Agreement is ambiguous as to whether interest applies.

### *Defendants' Position Regarding Prejudgment Interest*

Mr. Farinella argues that N.J. Ct. R. 4:42–11 governs prejudgment interest in tort actions and does not apply to prejudgment interest in breach of contract cases.

### *Trustee's Reply Arguments*

Mr. Gerace responded on behalf of the Trustee to Mr. Farinella's arguments. Mr. Gerace argues that Defendants' assertion that North Park no longer exists because it was a single asset real estate corporation is erroneous. Mr. Gerace argues that if one aspect of North Park failed, all of the company did not cease and North Park continues to operate presently.

The Trustee urges that the entirety of the requested attorneys' fees and costs are warranted because the evidence shows that the Debtor's $1.5 million was transferred to Michael and Mehran which was then transferred to Sion Nobel. Mr. Gerace argued that counsel for the Trustee had an obligation to conduct due diligence because Mr. Sakhe's funds were transferred to Sion Nobel who is related to Mehran and Michael's wives.

With respect to parsing out attorneys' fees and costs, Mr. Gerace cited *Donovan v. Dragados, S.A.*, 2015 U.S. Dist. LEXIS 173058 (D.N.J. Dec. 29, 2015) to argue that Defendants' attempt to break the litigation costs for attorneys' fees into pieces is not required under New Jersey law.  Mr. Gerace also cites to *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Mr. Gerace argues that the attorneys' fees and costs incurred in connection with this case were in good faith  and should be awarded.  The Trustee also argues that under Count Three, the Court found joint and several liability on the part of Mehran and Michael for the $100,000.00 payment.

### ***Defendants' Sur Reply***

Mr. Farinella argued that there was no evidence produced at trial as to North Park's viability.  Mr. Farinella also relies on this Court's decision in *In re Sakhe*, 2021 WL 5999195 (Bankr. D.N.J. Dec. 17, 2021).

Article 4, Section 4.2 of the North Park Agreement addresses the $7,000 monthly special distributions.  Section 4.5 of the North Park Agreement stated in relevant part that "in no circumstances shall [Debtor's] special distributions be less than $7,000 per month."    Mr. Farinella argues that a reasonable person could conclude that the terms of the North Park Agreement provide that the $7,000.00 special monthly distributions would be made only so long as these special monthly distributions were viable.  Here, Defendants noted the language in Section 4.5 of the North Park Agreement which states:

> [T]heses [sic] special distributions shall be considered advances against
> Member profits and a strict accounting shall be made as to each Members'
> special distribution amounts.  A periodic review after three (3) months or every
> calendar quarter shall be made to determine if the special distribution are viable
> or to be readjusted accordingly.

Ex. 1 at 5, (ECF No. 120).

Mr. Farinella asked this Court to apply N.J. Stat. Ann. § 2A:15-5.1-5.3 and *Erny* to apportion liability and damages to each defendant. Mr. Farinella conceded that this authority applies to comparative negligence cases. Nonetheless, Mr. Farinella argued that liability should be apportioned fifty percent to each defendant as it pertains to the $100,000 that is due and owing under Section 2 of the River City Agreement.

Mr. Farinella argues that with respect to prejudgment interest, the Court must apply New Jersey law, which states prejudgment interest in contract cases is not a matter of right but is determined by equitable principles. Mr. Farinella cited to *Jardine Estates, Inc. v. Donna Brook Corp.*, 42 N.J. Super. 332, 340-41 (Super. Ct. App. Div. 1956).

Mr. Farinella also argues that the Bankruptcy Code does not specify whether a prevailing Trustee should be awarded prejudgment interest and if this Court were to consider prejudgment interest, this Court should look to 28 U.S.C. § 1961, which pertains to post-judgment interest. Mr. Farinella argues that prejudgment interest should not apply here, but in the event the Court finds that prejudgment interest applies, this Court should apply prejudgment interest from the date the Adversary Complaint was filed, June 7, 2016, or when the Amended Adversary Complaint was filed on November 8, 2017. Finally, Defendants argued that an award of prejudgment interest would be punitive here given the 2008 financial crisis.

## ***LEGAL STANDARD & ANALYSIS***

The Court will now address the merits of the arguments presented and adjudicate the matter of damages. First, this Court incorporates its written Opinion, *Perkins v. N. Park Realty Mgmt., LLC (In re Sakhe)*, 2021 WL 5999195 (Bankr. D.N.J. Dec. 17, 2021), into this record and assumes familiarity with its findings of fact and conclusions of law.

### *Counts One and Four of the Amended Adversary Complaint*

As to Counts One and Four of the Amended Adversary Complaint, this Court awarded judgment in favor of the Trustee and against North Park for all amounts due and owing to Debtor plus default penalty interest at a rate of 8% per annum on all amounts past due and reasonable attorneys' fees.

As found in this Court's opinion, Counts One and Four of the Amended Adversary Complaint arise out of Section 4.3 of the North Park Agreement:

> 4.3 **Special Distribution to Sakhe**. Notwithstanding the terms contained herein, the Managers and LLC shall commit to a special monthly distribution of seven thousand ($7,000.00) dollars to Farooq Sakhe as an advance to profit distribution on the first day of each calendar month. The failure to tender the aforementioned payments to Sakhe by the Managers and LLC within ten (10) calendar days shall result in a default penalty interest of 8% per annum on all outstanding balances due and owed to Sakhe. ***In the event the Managers and LLC fails to pay Sakhe, then the LLC shall pay Sakhe's costs and expenses of collection including but not limited to reasonable attorney's fees.***

*In re Sakhe*, 2021 WL 5999195, at *38 (emphasis added).

Section 4.5 of the North Park Agreement provides:

> 4.5 **Limitations to Special Distributions**. Theses [sic] above-stated special distributions shall be considered advances against Member profits and a strict accounting shall be made as to each Members' special distribution amounts.  A periodic review after three (3) months or every calendar quarter shall be made to determine if the special distributions are viable or to be readjusted accordingly. **However, in no circumstances shall Farooq Sakhe's Special Distribution be less than $7,000.00 per month.**

Pl.'s Mem., Ex. 1 at 5, (ECF No. 120-1) (emphasis added).

With respect to Counts One and Four, the Court must determine whether damages should be awarded from February 1, 2009 to December 2013 or February 1, 2009 to January 20, 2022, or for some other time period.  The Court notes that with respect to these Counts:

The Trustee demands a judgment in his favor and against North Park, Mehran, and Michael for 60 months of special distributions in the amount of $420,000 due and owing to the Debtor plus a default interest of 8% per annum on all outstanding balances due from February 2009 through December 2013, and costs and expenses of collection including but limited to reasonable attorneys' fees.

*In re Sakhe*, 2021 WL 5999195, at *38.  Plaintiffs have not provided any facts or evidence to support that such payments should have been paid through December 2013 and that same are due and owing.  Conversely, Defendants argued that North Park failed in October 2010 and therefore such payments should cease as of that date.  *See* Defs.' Resp. 2, (ECF No. 118).

Both parties provided New Jersey law in support of their relative arguments.  Given that the North Park Agreement is silent as to the jurisdictional law and the Debtor filed bankruptcy in the District of New Jersey, this Court finds it is appropriate to interpret the North Park Agreement under applicable New Jersey law.

It is well-settled in New Jersey that "[c]ourts enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 118 (2014) (quoting *Caruso v. Ravenswood Devs., Inc.,* 337 N.J. Super. 499, 506 (App. Div. 2001).

This Court must determine the extent by which damages should be awarded under the North Park Agreement.  A reviewing court must consider contractual language "'in the context of the circumstances' at the time of drafting and . . . apply 'a rational meaning in keeping with the expressed general purpose.'" *Sachau v. Sachau*, 206 N.J. 1, 5-6 (2011) (quoting *Atl. N. Airlines v. Schwimmer*, 12 N.J. 293 (1953)).  "[I]f the contract into which the parties have entered is clear, then it must be enforced" as written. *Maglies v. Estate of Guy*, 193 N.J. 108 (2007); *accord Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36 (1960) ("Courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves

have made.") (quoting *Sellars v. Cont'l Life Ins. Co.*, 30 F.2d 42, 45 (4th Cir. 1929)).  Where

an agreement is ambiguous, "courts will consider the parties' practical construction of the

contract as evidence of their intention and as controlling weight in determining a contract's

interpretation." *Cnty. of Morris v. Fauver*, 153 N.J. 80, 103 (1998); *Matter of Cnty. of Atl.*,

230 N.J. 237, 254–55 (2017).

Here, the North Park Agreement does not contain specific language as to what would

happen if North Park failed.  Rather, the North Park Agreement provided that "[t]he failure to

tender the aforementioned payments to Sakhe by the Managers and LLC within ten (10)

calendar days shall result in a default penalty interest of 8% per annum on all outstanding

balances due and owed to Sakhe." *In re Sakhe*, 2021 WL 5999195, at *38.  As previously

noted,

> North Park's accounting records demonstrate North Park paid the Debtor from
> approximately November 2007 until December 2008.  Then in January 2009,
> North Park paid the Debtor $1,000.  In February 2009, North Park paid the
> Debtor $1,500 in March 2009 [sic].  At minimum, the Debtor had constructive
> notice and reasonable knowledge that a potential cause of action existed against
> the Defendants for failure to tender the contractually obligated monthly
> payment of $7,000 in December 2008.

*Id.* at *33 (footnotes omitted).  The evidence presented does not provide an exact date by

which North Park ceased to operate.  Nonetheless, this Court relies on North Park's history of

payments and consideration of the loss of North Park's largest tenant, United Healthcare, that

vacated the premises in November 2009 and the impact of the 2008 financial crisis in finding

that North Park operated from October 2007 until approximately October 2010.

At oral argument on July 21, 2022, counsel for the Defendants argued that damages

should only be calculated up until the point that North Park did not operate any longer.

Defendants' counsel argued that this occurred when North Park's largest tenant vacated the

property which was around March 2009; however, Defendants also provided a conclusion that North Park ceased in October 2010. *See* Defs.' Resp. 2, (ECF No. 118). As previously noted by this Court, North Park's largest tenant, United Healthcare, vacated the premises in March 2009. *In re Sakhe*, WL 5999195, at *4. This Court also previously found that the financial crisis of 2008 impacted North Park, that North Park was subjected to the 2008 financial crisis, which contributed to the loss of its largest tenant. *Id.* at *48.

Here, this Court relies on its previous determination in finding that North Park was financially impacted by the loss of its largest tenant. Additionally, "[b]eginning October 2007, the Debtor received these payments for approximately one year." *Id.* at *3. This aligns with the Defendants' argument that North Park was unable to recover financially and ceased operations some 36 months later in October 2010. Also, payment of the special monthly distributions of $7,000 ceased in December 2008. *Id.* at *38.

Therefore, this Court concludes for purposes of deciding damages[10], that North Park operated for a total of some 36 months from October 2007 until October 2010. Previously the Court determined that a total of approximately 16.21 payments of the $7,000 monthly distribution payments, totaling $113,500, were made in connection with the North Park Agreement. *Id.* at *38.

This Court awards the following in connection with Counts One and Four of the

---

[10] Although not argued by the parties, the Court notes that an award of lost profits is not supported by this record under the laws of New Jersey, Michigan, or Iowa. The North Park Agreement is governed by Michigan law and the River City Agreement is governed by Iowa law. The contracts at issue—North Park at Section 4.5 and River City at Section 9(c)—each provide that the special distributions to Sakhe were to be made regardless of the availability of profits, treatment analogous to a regular expense. "Lost profits' signifies the difference between gross income and the costs or expenses which had to be expended to produce the income." *Cromartie v. Carteret Sav. & Loan*, 277 N.J. Super. 88, 103 (App. Div. 1994); *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 962 (8th Cir. 2003) (citing *Lundell Mfg. Co., v. Am. Broad. Cos., Inc.*, 98 F.3d 351, 365 (8th Cir. 1996) ("Decreased income after the defendant's damaging conduct" is sufficient to recover lost profits); *Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 542 F. Supp. 2d 677, 680–81 (E.D. Mich. 2008), *aff'd*, 358 F. App'x 643 (6th Cir. 2009) (stating that Michigan law requires a defendant to know, or should know, that a plaintiff would lose profits in the event of a breach).

Amended Adversary Complaint.  This Court finds a total of 19.79 payments are still due and

owing, or $138,530.00.  Default Penalty Interest at 8% per annum on the outstanding balance

is awarded in accordance with the express terms of the North Park Agreement.  That amount

shall be calculated and submitted by Plaintiff's counsel.

### <u>Counts Two and Three</u>

Count Two is governed by Section 9(c) of the River City Agreement whereas Count

Three is governed by Section 2 of the River City Agreement.  Section 9(c) of the River City

Agreement states:

> **Special Distribution to Sakhe**. Notwithstanding the terms contained herein, the Company shall commit to a special monthly distribution of one thousand ($1,000.00) dollars to Farooq Sakhe as an advance to profit distribution on the 30th day of January, 2008 and continuing monthly on the fifth day of each calendar month thereafter. Beginning as of February 5, 2008, and continuing through June 2008, the special distribution to Sakhe shall be paid only if there is remaining net profits available after satisfying all accounts payable, bills, expenses, costs, deposit into reserves and allocations for capital and tenant improvements. In the event distribution is not made to Sakhe, then said monthly distributions shall be deferred until such time as the funds become available and shall be treated as priority over Assignors distribution. **Beginning on July 5, 2008, and continuing thereafter, the special distribution to Sakhe shall be made as a regular expense of the Company, regardless of the availability of net profits** *and payment to be personally guaranteed by Kohansieh.*

*In re Sakhe*, 2021 WL 5999195, at *43 (emphasis added).

Section 2 of the River City Agreement states:

> Subject to Zetterlund's retention of a Fifty-One percent (51%) interest in the company, which interest will automatically terminate and revert to Assignors and Assignee upon Zetterlund's receipt of the balance due from Assignors and Assignee, and Zetterlund's being released from all financial responsibility and debt of the Company, including release of any personal guarantee for the mortgage with
>
> M&T Bank subject to the foregoing, Assignors hereby sell, assign, transfer, convey and set over to Assignee the Assigned Interest, to have and hold the Twenty Percent (20%) Assigned Interest unto Assignee, its successors and assigns forever, it being understood that this Assignment shall include every

right, without limitation, that Assignors has or may have in the Assigned Interest and in that portion of the Company and under the Company Documents which is represented by the Assigned Interest. In conjunction herewith, Assignors will make available for inspection all books, records, and other property and assets of the Company, whether tangible or intangible, upon Assignee's reasonable request for access to said documents. In the event Assignors fail to comply with the terms and conditions of the aforementioned Amended and Restated Assignment and Assumption of Stock including but not limited to the obligated payments to Zetterlund or failure to obtain the release of Zetterlund's obligation and personal guarantee to M&T Bank within the time period as stated in the Amended and Restated Assignment and Assumption of Stock, ***then Assignors, jointly and severally, hereby agree to personally guarantee the return of $100,000.00 to Assignee within thirty (30) days.*** Assignors shall be responsible for the payment of any costs and expenses for collection of said sums due, including but not limited to reasonable attorney's fees.

*In re Sakhe*, 2021 WL 5999195, at *46 (emphasis added).

As to Count Two, the Court granted judgment in favor of the Trustee and against Mehran Kohansieh on his personal guarantee of payment of the $1,000 a month special distribution under Section 9(c) of the River City Agreement, including appropriate interest. The Court found that attorneys' fees were not guaranteed by Defendant Kohansieh, so these amounts were not awarded.

This Court must determine when the River City Agreement was operational. This Court finds that River City was operational from the date of the execution of the River City Agreement, January 11, 2008, until the $1,000 monthly distribution payments stopped. *Id.* at 3 (Debtor testified to receiving a "few" of these payments). Pursuant to Section 9(c) of the River City Agreement, these monthly payments were to commence on January 30, 2008. Neither side provided a definitive agreement or determination as to the exact definition or meaning of a "few". This Court previously found that "the Defendants breached the River City Agreement on or about April/May 2008." *Id.* at *35. This Court made that

43

finding on the basis "that none of the parties testified to when these payments precisely stopped. Hence, the Court relies on the Debtor's testimony that he received these payments for a 'few' months. This Court conclude[d] that 'few months' means these payments ceased in April/May 2008." *Id*. at *35 n.481. Thus, this Court finds that three (3) monthly payments were made.

Even though these monthly payments stopped in April/May 2008, this Court looks at the circumstances surrounding the cessation of these payments, which included the 2008 financial crisis. The Court remains consistent in its determination that the 2008 financial crisis affected both the River City and North Park Agreements, as Michael Khakshoor provided direct testimony showing the interdependence of these agreements: "North Park stopped paying the Debtor the $7,000 monthly checks so when Michael was asked why he stopped writing the monthly $1,000 checks to the Debtor in connection with the River City Agreement, he responded that '[b]ecause after a few months we lost the other property also.'" *Id*. at *17. United Healthcare vacated the North Park premises in March 2009. *Id*. at *4. This Court concludes that the River City Agreement operated for some fifteen (15) months from January 2008 until North Park lost its largest tenant, United Healthcare, in March 2009.

Thus, with respect to Count Two, Mehran on his personal guarantee owes a total of twelve months of the $1,000 monthly special distribution totaling $12,000.00 on account of payments due from April 5, 2008 through March 5, 2009.[11]

---

[11] Section 9(c) is unclear as to whether all $1,000 monthly payments were guaranteed by Mehran Kohansieh or whether the guaranty was limited to payments due on and after July 5, 2008. Therefore, this contractual provision will be construed against the drafters and the Court will find that all payments were to be personally guaranteed by Kohansieh. "New Jersey follows several general rules in the construction of contracts . . . where there is ambiguity, the words are construed against the drafter." *Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646, 653 (D.N.J. 2018) (citing *In re Community Med. Ctr.*, 623 F.2d 864, 866 (3d Cir. 1980)).

### *Calculation of Interest*

Counts Two and Three both pertain to the River City Agreement, which is governed by Iowa law.  Under Iowa Code § 535.2:

> 1. Except as provided in subsection 2, the rate of interest shall be five cents on the hundred by the year in the following cases, unless the parties shall agree in writing for the payment of interest at a rate not exceeding the rate permitted by subsection 3:
> a. Money due by express contract.
> b. Money after the same becomes due.
> c. Money loaned.
> d. Money received to the use of another and retained beyond a reasonable time, without the owner's consent, express or implied.
> e. Money due on the settlement of accounts from the day the balance is ascertained.
> f. Money due upon open accounts after six months from the date of the last item.
> g. Money due, or to become due, where there is a contract to pay interest, and no rate is stipulated.

Based on the above, interest should accrue from the date each monthly payment was due.  With respect to Count Two the Court awarded appropriate interest.  Based on the aforementioned, the Court will apply an interest rate of 5%. The Court previously found "Mehran is personally liable to the Trustee for the damages incurred as a result of the failure to tender the $1,000 monthly distribution payments to the Debtor." *In re Sakhe*, 2021 WL 5999195, at *44.

This Court enters judgment in the amount of $12,000.00 in favor of the Trustee and against Mehran in connection with Count Two of the Amended Adversary Complaint.  The amount of interest shall be calculated and submitted by counsel for the Plaintiff.

### *Count Three*

As to Count Three, judgment was entered in favor of the Trustee and against Mehran Kohansieh and Michael Khakshoor jointly and severally on their personal guarantee for the return of $100,000 to the Debtor, plus costs and expenses of collection including reasonable

attorneys' fees under Section 2 of the River City Agreement.

The River City Agreement does not provide a definitive timeline as to when Mehran and Michael had to have paid the Debtor $100,000. However, based on the Iowa law cited above, the Court finds it appropriate to calculate interest here as well. The Court had previously found both Mehran and Michael personally and severally liable for Count Three. *See In re Sakhe*, 2021 WL 5999195, at *46 ("[T]his Court finds that Mehran and Michael are jointly and severally liable to the Trustee for the sum of $100,000 plus costs and expenses of collection, including reasonable attorneys' fees."). Thus, the Court applies the interest rate of 5% to the sum of $100,000 which, according to the Trustee's calculations, yields interest of $27,918.90. With respect to Count Three the Court enters judgment in favor of the Trustee and against Michael and Mehran jointly and severally in the total amount of $127,918.90. The Court finds no basis to apportion to each defendant 50% of the liability for the amount of the judgment.

### *Attorneys' Fees*

The Trustee Plaintiff has provided this Court with an itemization of his attorneys' fees. *See* Ex. 3, 4, and 5, (ECF No. 120). Defendants dispute the reasonableness of these fees.

Here, the Gerace firm requests fees in the amount of $318,690.75 and costs of $16,860.81. The McElroy Deutsch firm requests fees in the amount of $130,555.00 and costs of $4,933.26. The Becker firm requests fees in the amount of $93,187.50 and costs of $2,215.96.

The Court will leave the award of attorneys' fees for further proceedings and issue a separate supplemental judgment for that matter.

The Trustee has the authority, subject to the court's approval, to employ disinterested attorneys or other professionals to aid the Trustee in the execution of their duties. 11 U.S.C. § 327.

Rule 2016 and D.N.J. LBR 2016–1 require that an application for compensation be filed for "[a]ny

entity seeking interim or final compensation for services, or reimbursement of necessary expenses

from the estate". FED. R. BANKR. P. 2016.

The Trustee has received the Court's approval to employ the firms that represented the

Trustee in this case[12], however no formal applications for compensation to date have been filed.

The invoices submitted by Counsel do not meet the requirements of the rules, however. While the

Trustee is requesting payment of fees from non-estate third parties, the Court here will require the

filing of fee applications by the three firms herewith the required content and on the Fee

Application cover sheet set forth in D.N.J. LBR 2016-1(b)(10).

The Court will now set forth how it will analyze the forthcoming fee applications from the

Plaintiff.

The starting point for an evaluation of a professional fee award in a bankruptcy case is 11

U.S.C. § 330, which provides:

> (a)(1) After notice to any parties in interest and to the United States Trustee and
> a hearing, and subject to sections 326, 328 and 329 [of this title], the court may
> award to a trustee . . . , an examiner . . . , or a professional person employed
> under section 327 or 1103 [of this title]
>
> (A) reasonable compensation for actual, necessary services rendered by the
> trustee, examiner, . . . professional person, or attorney or by any
> paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.
>
> . . . .
>
> (3) In determining the amount of reasonable compensation to be awarded to an
> examiner, trustee under chapter 11, or professional person, the court shall

---

[12] See Order Authorizing Retention of McElroy, Deutsch, Mulvaney & Carpenter, LLP, (ECF No. 11), Case No. 15-
32238; Order Authorizing Retention of Gerace Law Office as Special Counsel, (ECF No. 16), Case No. 15-32238;
Order Authorizing Retention of Becker LLC, as Successor Counsel to Eric R. Perkins, as Successor Chapter 7 Trustee,
(ECF No. 67), Case No. 15-32238. Each Order indicates the firms will be compensated as the Court permits upon
"proper application(s)".

consider the nature, the extent, and the value of such services, taking into account all relevant factors including –

(A) the time spent on such services;

(B) the rates charged for such services;

€ whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed with a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a).

The Third Circuit, in the cases of *Lindy Bros. Builders of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) and *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976), enumerated the standards governing attorneys' fee awards. Courts have applied the same standards for determining the reasonableness of professional fees. *See e.g.*, *In re Am. Mortg. & Inv. Servs.*, 158 B.R. 43, 47 (Bankr. D.N.J. 1993).

The *Lindy* courts determined that the first step in valuing an attorney's services was to ascertain the time spent and fixing a reasonable hourly rate, considering the attorney's legal reputation and status. This is to be the lodestar of the court's fee determination. But then the court must also consider two other factors: (1) the contingent nature of success and (2) whether the quality of the work performed mandates increasing or decreasing the amount to which the

attorney is entitled. *See Lindy*, 487 F.2d at 167-168; *see also In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833 (3d Cir. 1994) (reaffirming the lodestar approach in calculating attorneys' fees). Bankruptcy courts have traditionally looked to certain factors in fixing professional fees, including:

1. the time spent;

2. the intricacies of the legal questions involved;

3. the size of the debtor's estate;

4. the opposition encountered;

5. the results obtained.

*See In re Paramount Merrick Inc.*, 252 F.2d 482, 485 (2d Cir. 1958); *In re Hardwick & Magee Co.*, 355 F. Supp. 58 (E.D. Pa. 1973).

Courts have determined reasonable fees not purely on the basis of time spent, but whether the problems in a case are complex, unusual, the nature of the work, and size of the estate. *See Matter of Nu-Process Indus., Inc.*, 13 B.R. 136, 138 (Bankr. E.D. Mich. 1981); *see also In re Imperial "400" Nat'l, Inc.*, 274 F. Supp. 351, 359 (D.N.J. 1967). Judge Shaw stated that "the time factor is not the sole guide in evaluating legal services. The size of the estate, the complexity of the debtor's affairs, the expertise of counsel, and the results achieved . . . must be given consideration in fixing reasonable fees." *In re Imperial "400" Nat'l, Inc.*, 274 F. Supp. at 359.

Additionally, and particularly relevant to this case, "a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." *Stadler v. Abrams*, No. CV 13-2741 (RBK/AMD), 2018 WL 3617967, at *2 (D.N.J. July 30, 2018), *aff'd*, 785 F. App'x 66 (3d Cir. 2019) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984));

*see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

Counsel for the Trustee is seeking a total of $542,433.25 in attorneys' fees and $24,010.03 in costs, for a total of $566,443.28. This matter involved the Debtor, some five defendants, two contracts and properties located in two different states. Given the history and length of this case, this matter was complex.

This Court must also look to the results obtained. Here, although the Trustee was successful on some of the Counts of the Amended Adversary Complaint, the Trustee argues that Plaintiff's claims for relief involved a common core of facts based on related legal theories such that the fee award should not be reduced simply because Plaintiff did not prevail on every claim raised in the lawsuit "[S]tatus as a prevailing party is determined on the outcome of the case as a whole, rather than by piecemeal assessment of how a party fares on each motion along the way." *S.C. by & through M.C.*, 2020 WL 5262267, at *11. As the Supreme Court said in *Hensley*,

> [Where] the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith my raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

461 U.S. at 435.

The New Jersey Supreme Court[13] tests, in awards for reasonable attorneys' fees in contract cases, "whether the party seeking the fee prevailed in the litigation", "the degree of success in

---

[13] In Iowa, "[w]hen a written contract allows for the recovery of attorney's fees, the award must be for reasonable attorney's fees. Iowa Code § 625.22. The burden is on the party seeking to recover fees". *Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.*, 728 N.W.2d 832, 842 (Iowa 2007). In Michigan, courts start their reasonableness analysis by determining the local rate for similar legal services, which is "multiplied by the number of hours reasonably expended by each attorney for whom the recovery of fees is sought to derive a 'baseline figure.' . . . [and the consideration of several factors] to decide if any adjustment to the 'baseline figure' is warranted: (1) the experience, reputation, and ability of the lawyer or lawyers performing the services, (2) the difficulty of the case . . . (3) the amount

50

determining the reasonableness of time expended", and the application of a proportionality analysis: "when the amount actually recovered is less than the attorney's fee request, the court must consider that fact in determining the overall reasonableness of the attorney's fee award." *Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 386–88 (2009).

> Thus, when a party has succeeded on only some of its claims for relief, the trial court should reduce the lodestar to account for the limited success. Moreover, if the same evidence adduced to support a successful claim was also offered on an unsuccessful claim, the court should consider whether it is nevertheless reasonable to award legal fees for the time expended on the unsuccessful claim.

*Id.* at 387 (internal citation omitted). This "analysis is necessarily fact-sensitive as there is no precise test or mathematical calculation for that adjustment. The trial court is in the best position to weigh the competing arguments in making any fee adjustment to ensure that the counsel fee award is reasonable." *Id.* at 389; *see, e.g.*, *In re O'Brien*, No. 03-17448 (RTL), 2010 WL 1999611, at *3 (Bankr. D.N.J. May 18, 2010), *aff'd sub nom. Cleveland v. O'Brien*, No. CIV 10-3169 GEB, 2010 WL 4703781 (D.N.J. Nov. 12, 2010) (citing *Litton* in analysis of the reasonableness of attorneys' fees). "The award need not necessarily be proportionate to the damages recovered." *Grow Co. v. Chokshi*, 424 N.J. Super. 357, 367–68 (App. Div. 2012).

These principles will guide the Court's analysis of the reasonableness of the fees sought and will be addressed in connection with fee applications to be submitted per the Federal Rules of Bankruptcy Procedure, the Local Rules, and the Orders that authorized the employment of the Special Counsel and associated professionals.

---

in question and the results obtained, (4) the expenses incurred, (5) the nature and length of the professional relationship with the client, (6) the likelihood . . . that acceptance of the particular employment will preclude other employment by the lawyer, (7) the time limitations imposed by the client or by the circumstances, and (8) whether the fee is fixed or contingent." *Valvoline, LLC, et al., v. Franks Oil King, Inc., et. al.*, No. 20-CV-10044, 2021 WL 3772894, at *7 (E.D. Mich. Aug. 23, 2021) (describing this approach to determine reasonable attorneys' fees under a contract provision).

### *Prejudgment Interest*

In New Jersey, "the award of prejudgment interest on contract and equitable claims is based on equitable principles. . . [and] is a matter of discretion for the trial court." *Cnty. of Essex*, 186 N.J. at 61 (2006). An award of prejudgment interest is retrospective. "An award of prejudgment interest for future loss is not allowed under New Jersey law." *Gleason v. Norwest Mortg., Inc.*, 253 F. App'x 198, 204 (3d Cir. 2007). And it is not a punitive measure. "[T]he purpose of a prejudgment interest award is to compensate a party for the lost use of monies." *Id.* at 205. "Prejudgment interest exists to make plaintiffs whole and to preclude defendants from garnering unjust enrichment." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 102 (3d Cir. 2012).

Defendants' counsel asserts that N.J. Ct. R. 4:42–11 governs prejudgment interest in tort actions and does not control prejudgment interest in breach of contract matters. "However, absent unusual circumstances, trial courts should refer to N.J. Court Rule 4:42–11(b) when determining the rate of prejudgment interest." *Devine v. Advanced Computer Concepts Inc.*, No. CIV. 08-875GEB, 2009 WL 78158, at *3 (D.N.J. Jan. 9, 2009); *see also Nelson v. Elizabeth Bd. of Educ.*, 466 N.J. Super. 325, 345 (App. Div. 2021).

New Jersey law prohibits prejudgment interest on attorneys' fees "[a]bsent a controlling contractual provision" because it "would be contrary to our strong public policy disfavoring shifting of attorneys' fees." *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys.*, 158 N.J. 561, 575–76 (1999). *See also KCG Holdings, Inc. v. Khandekar*, No. 17CIV3533AJNGWG, 2020 WL 7053229, at *15 (S.D.N.Y. Dec. 2, 2020), *report and recommendation adopted sub nom. KCG Holdings v. Khandekar*, No. 17-CV-3533 (AJN), 2021 WL 623927 (S.D.N.Y. Feb. 17, 2021) ("[T]he New Jersey Supreme Court has held that New Jersey law does *not* permit interest to run pre-judgment on an award of attorney's fees."). "[E]ven where

attorney-fee shifting is controlled by contractual provisions, courts will strictly construe that provision in light of the general policy disfavoring the award of attorneys' fees." *N. Bergen Rex Transp.,Inc.*, 158 N.J. at 570.  *See also Dickman Bus. Brokers v. Tomasulo*, No. A-4535-09T2, 2011 WL 2348480, at *6 (N.J. Super. Ct. App. Div. June 9, 2011) (same); *Amba v. Rupari Food Servs., Inc.*, No. CV104603MASTJB, 2016 WL 6471019, at *4 (D.N.J. Oct. 31, 2016) (same).  In this case, the contractual provisions at issue do not address prejudgment interest for an award of attorneys' fees, therefore the Court will not award prejudgment interest on attorneys' fees.  *See In re Sakhe*, 2021 WL 5999195 at *34, *38 (setting forth relevant provisions of the River City and North Park agreements).

The equities favor an award of simple prejudgment interest to Plaintiff on the other amounts determined to be due to the Trustee.  The Court recognizes the difficult economic conditions created by the 2008 financial crisis and the related effects on Defendants and their businesses.  The Court also notes that the underlying contract dispute ran from December 2011 to December 2021, when this Court rendered its decision in *In re Sakhe*.  Throughout that ten-year period the Debtor, and now the estate, were deprived of the use of money that should have been paid.

The Court awards simple prejudgment interest to accrue from the date of the filing of the original complaint in this court, June 7, 2016, until December 17, 2021, the date this Court issued and filed its Opinion in the underlying action.  Plaintiff's counsel will submit a proposed form of judgment with interest calculations consistent with this opinion.

### *Conclusion*

For the reasons set forth herein with respect to Counts One and Four, this Court enters judgment in favor of the Trustee and against North Park in the amount of $138,530.00 plus

interest to be calculated as set forth herein.

With respect to Count Two this Court enters judgment in favor the Trustee and against Mehran in the amount of $12,000.00 plus interest to be calculated as set forth herein.

With respect to Count Three this Court enters judgment in favor of the Trustee and against Mehran and Michael, jointly and severally, in the amount of $100,000.00 plus interest of $27,918.90, for a total of $127,918.90.

The Court, after a further hearing to be scheduled, will issue a supplemental judgment with respect to the requested attorneys' fees and costs.

Simple pre-judgment interest shall accrue on these awards, except for any awarded attorneys' fees and costs, from the date of the filing of the original complaint in this Court, June 7, 2016, to December 17, 2021, the date this Court issued and filed its Opinion in the underlying action, at the rate specified in N.J. Ct. R. 4:42–11(b).

Post judgment interest shall accrue on these awards at the federal post judgment rate provided for in 28 U.S.C. § 1961.

A proposed form of Judgment shall be submitted by Plaintiff's counsel within 15 days of the date of this Decision.

DATED   March 16, 2023

*Rosemary Gambardella*

_____
ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE